IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL ANTHONY MARSHALL    :

     Plaintiff,    :

vs.    :    CIVIL ACTION 05-0279-CG-C

JERRY FERRELL, et al.,    :

     Defendants.    :

<u>REPORT AND RECOMMENDATION</u>

    This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that Defendant Correctional Officer Michael Caraway and Defendant Correctional Officer Christopher Johnson allowed Plaintiff to be attacked by a fellow inmate while walking in the segregation exercise yard.  (Doc. 1 at 5-7, Complaint).  Plaintiff further contends that Defendant Warden Jerry Ferrell failed to provide enough security for G.K. Fountain Correctional Center.  (Doc. 1 at 6).  As relief, Plaintiff seeks monetary compensation, attorney's fees, and costs of the proceedings.[1]  Plaintiff also seeks to have the disciplinary issued in violation of Rule # 403, vacated from his institutional record.  (Doc. 1 at 5).

    Defendants Ferrell, Caraway, and Johnson filed an Answer (Doc. 19) and a Special

---

[1]Plaintiff has requested an award of attorney's fees, however, as a matter of law, a pro se plaintiff cannot recover attorney's fees under 42 U.S.C. § 1988.  *Cofield v. City of Atlanta*, 648 F.2d 986 (5th Cir. 1981).

Report (Doc. 20) on May 8, 2006, denying that they violated Plaintiff's constitutional rights and asserting that a claim of *respondeat superior* against Defendant Ferrell is not actionable under § 1983.  Additionally, Defendants have pled the affirmative defenses of qualified immunity, Eleventh Amendment immunity, state discretionary immunity, immunity pursuant to § 6-5-338 of the Code of Alabama, and immunity pursuant to Section 14 of the Constitution of Alabama of 1901. (Doc. 19, Answer).  Defendants also contend that Plaintiff is precluded from bringing a federal civil action under 42 U.S.C. § 1997e(e).  (*Id.*).

On August 4, 2006, this Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment.  (Doc. 24, Order).  On August 28, 2006, Plaintiff responded with a Motion for Evidentiary Hearing, reiterating his original claims.[2]  (Doc. 25, Motion for Evidentiary Hearing).  In accordance with the Court's Order, Defendants' Motion for Summary Judgment was taken under submission on September 8, 2006.  After consideration by the Court, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Jerry Ferrell, Michael Caraway and Christopher Johnson, and against Plaintiff Michael Marshall on all claims.

---

[2]On December 12, 2006, Plaintiff also filed a document titled "Sumittion," alleging that he has been the "target" of six rule violations since filing his Complaint in this action. (Doc. 28).  He also states that he has been on restriction since that time.  Although somewhat unclear, it appears that Plaintiff may be attempting to raise a claim of retaliation, which is outside the scope of his Complaint in this action.  If Plaintiff wishes to pursue a retaliation claim, he must do so in a separate action.

<u>I. FACTS</u>

1.      On April 8, 2005, while incarcerated at Fountain Correctional Facility ("Fountain"), Plaintiff was attacked in the segregation yard by a fellow inmate, Michael Thomas.  (Doc. 1 at 5).  Plaintiff contends that his own hands were handcuffed behind him, while inmate Thomas's hands were handcuffed in front of him.[3]  (*Id.*).  Thomas and Plaintiff had been having an argument the night before, and apparently the argument carried over to the next day.  (Doc. 25 at 5, Affidavit of Plaintiff).  Plaintiff claims that although he shouted for help, Defendants Johnson and Caraway allowed the attack to occur. (Doc. 1 at 5).  While Plaintiff was treated in the infirmary at Fountain, he complains that he was only treated with peroxide, and that no x-rays were taken.  He also complains that he was not given follow-up medical care.  (*Id.*).

2.      Although Plaintiff believes that it was clear that he was assaulted with inmate Thomas's handcuffs, following the incident, both Plaintiff and inmate Thomas were charged with fighting without a weapon.  (Doc. 1 at 5).  Plaintiff claims that he received 21 days disciplinary segregation and 60 days restriction, and inmate Thomas received 10 days disciplinary segregation and 30 days restriction.[4]  (*Id.*).

_____

        [3]In the Institutional Incident Report dated April 8, 2005, Defendant Johnson noted that inmate Thomas admitted to him that he stepped through his handcuffs.  (Doc. 20, Ex. 1 at 3).

        [4]Prison records indicate that both Plaintiff and inmate Thomas received ten days disciplinary segregation, along with thirty days loss of privileges.  (Doc. 20, Ex. 1 at 8-17).

3.      According to Defendants, when Officer Johnson first observed Plaintiff and inmate Michael Thomas in a physical altercation in the segregation exercise yard, he and Defendant Officer Caraway immediately approached Plaintiff and inmate Thomas.  (Doc. 20, Special Report, Ex. 2, Affidavit of Defendant Officer Michael Caraway).  Defendant Officer Caraway opened the exercise yard gate, while Defendant Officer Johnson removed his Freeze Plus P spray from his belt and ordered the inmates to stop fighting. (*Id.*).  According to both officers, Plaintiff and inmate Thomas complied with the order to stop fighting.  (Doc. 20, Ex. 2, and Ex. 3, Affidavit of Defendant Officer Christopher S. Johnson).  Defendant Johnson avers that he could not have prevented the fight as he did not know that it was about to occur.  (*Id.*).  Defendant Johnson also notes that following the altercation, both inmates received a medical assessment, and were released to return to segregation.[5]  (*Id.*).

4.      According to Defendant Warden Jerry Ferrell, Plaintiff was involved in mutual combat with inmate Thomas on April 8, 2005. Defendant Ferrell contends that, although the two inmates had argued the night before the fight, the prison staff had not been advised of any problems existing between Plaintiff and inmate Thomas prior to this altercation.  (Doc. 20, Ex. 1, Affidavit of Defendant Warden Jerry Ferrell).  Defendant Ferrell notes that had Plaintiff notified the prison staff of problems between him and

---

[5]Defendant Johnson states that contrary to Plaintiff's allegations, inmate Thomas was not on "walk alone" status at the time of this incident, but following the incident, both inmate Thomas and Plaintiff were placed on "walk alone" status.  (Doc. 20, Ex. 3).

inmate Thomas, the incident could have been prevented.  (*Id.*).  Further, according to

Defendant Warden Ferrell, prison security staff responded appropriately to the altercation,

and the actions taken by the staff were within the Alabama Department of Corrections'

policies and procedures.  (*Id.*).

5.      Plaintiff was examined in the prison infirmary, following the altercation,

around 7:45 a.m. (Doc. 20, Ex. 3 at 6, Medical Record).  Plaintiff's condition upon

admission was noted as "good."  (*Id.*).  Plaintiff was treated for two superficial lacerations

on the front of his head, and a scratch on the back of the top of his head.  Slight bleeding

was noted, but the bleeding ceased after the cuts were cleaned.  (*Id.*).  Plaintiff was

subsequently released back to segregation just fifteen minutes later, and did not have to

take any pain medication.  (*Id.*).  Plaintiff alleges that he has continued to complain of

headaches, although he has failed to offer any evidence in support of this allegation.

(Doc. 1 at 5).

6.      On April 18, 2005, both Plaintiff and inmate Thomas were found guilty of

violating Rule # 35, fighting without a weapon, and ordered to ten days disciplinary

segregation and thirty days loss of store, phone, and visiting privileges.  (Doc. 20, Ex. 1 at

8-17).

## II. SUMMARY JUDGMENT STANDARD

1.      In analyzing the propriety of a motion for summary judgment, the Court

begins with these basic principles.  The *Federal Rules of Civil Procedure* grant this Court

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed. R. Civ. P.* 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

      2.      However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at 325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  Summary judgment will be granted against a party who fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.

<u>III. DISCUSSION</u>

      1.      In this action, Plaintiff seeks redress for an alleged constitutional

deprivation pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .  For the purposes of
> this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the
> District of Columbia.

42 U.S.C. § 1983 (1994).

    2.    Plaintiff claims that Defendants violated his Eighth Amendment right to be

free from cruel and unusual punishment by failing to provide adequate security in the

segregation exercise yard, and allowing Plaintiff to be attacked by fellow inmate, Michael

Thomas.[6]  (Doc. 1 at 5-6).  Defendants maintain, however, that they responded

---

    [6]   It is unclear from the Complaint whether Plaintiff is suing Defendants in their
official capacities, individual capacities, or both.  Thus, the Court will consider both.  As
state officials, Defendants are absolutely immune from suit *for damages* in their official
capacities, *see Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state
officials sued in their official capacities are protected from suit for damages under the
Eleventh Amendment).  Defendants are not immune, however, from suit in their official
capacities for prospective injunctive relief to end continuing violations of federal law.
*See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also Summit Med. Assocs., P.C. v.
Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

    "Qualified immunity protects government officials performing discretionary
functions from suits in their individual capacities unless their conduct violates 'clearly
established statutory or constitutional rights of which a reasonable person would have
known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v.
Pelzer,* 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is
appropriate in a given case, "[t]he court must first ask the threshold question whether the
facts alleged, taken in the light most favorable to the plaintiffs, show that the government

immediately to the altercation between Plaintiff and inmate Thomas, and stopped the fight between the two inmates.  (Doc. 20).  Defendants further assert that they had no knowledge of any risk of harm to Plaintiff from Thomas or any other inmate prior to the altercation.  (Doc. 20).

3.      The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  *U.S. Const. Amend.* VIII.  The Eighth Amendment proscription of cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994).

4.      In *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . .  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food,

---

official's conduct violated a constitutional right."  *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.

> clothing, shelter, medical care, and reasonable safety -- it
> transgresses the substantive limits on state action set by the
> Eighth Amendment and the Due Process Clause.

489 U.S. at 199-200 (internal citations omitted).  Because the Eighth Amendment protects

a prisoner from cruel and unusual punishments, it imposes a duty on officials to protect an

inmate from attack by another inmate; however, not every injury inflicted by another

inmate results from a violation of the Constitution.  *Farmer*, 511 U.S. at 832-34.

5.     In order to prevail on his Eighth Amendment claim brought under § 1983 in

this case, Plaintiff must prove three elements: "(1) a condition of confinement that

inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.

Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to

that condition, *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271

(1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)."

*LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

6.     In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Court described the

first two elements as follows:

> An Eighth Amendment claim is said to have two components,
> an objective component, which inquires whether the alleged
> wrongdoing was objectively harmful enough to establish a
> constitutional violation, and a subjective component, which
> inquires whether the officials acted with a sufficiently
> culpable state of mind.

*Sims*, 25 F.3d at 983.  The objective component of an Eighth Amendment claim inquires

 whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or

suffering upon the prisoner." *See LaMarca v. Turner*, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency..., but must be balanced against competing penological goals." *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

7.      While the objective component to the Eighth Amendment claim involves the extent of the claimed injury, the subjective component generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. *Id.* (citations omitted). In defining "deliberate indifference," the Court stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. The Court concluded that the "subjective recklessness"

10

standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id.* at 839-40. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not..." *Farmer*, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual subjective knowledge is the key. *See*, *e.g.*, *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-45. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*

8.      Finally, Plaintiff must establish an affirmative causal connection between Defendants' actions, orders, customs, policies, or breaches of statutory duty and a deprivation of Plaintiff's constitutional rights in order to state a claim upon which relief can be granted. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation; by proving that a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights; or by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Plaintiff's constitutional injury. *Id.*

<u>Plaintiff Suffered Only *De Minimis* Injuries</u>

11

9.     Having set forth the general legal principles relevant to Plaintiff's claim, the Court now turns to the application of those legal principles to the facts before the Court. Initially, the Court notes that Plaintiff has failed to even allege an injury that is "objectively, 'sufficiently serious'" enough to state an Eighth Amendment claim. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Immediately following the altercation, Plaintiff presented to the prison infirmary in "good" condition.  (Doc. 20, Ex. 3 at 6, Medical Record).  Plaintiff was treated for two superficial lacerations on the front of his head, and a scratch on the back of the top of his head.  Slight bleeding was noted, but the bleeding ceased after the cuts were cleaned. (*Id.*).  Plaintiff was subsequently released back to segregation just fifteen minutes later, without having to take any pain medication.  (*Id.*).

10.     In determining that Plaintiff's injuries are not serious enough to state an Eighth Amendment claim, the Court finds instructive the types of injuries which have been held by this Court, and other courts, to also be insufficient to support claims under the Eighth Amendment, such as: a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, *Walker v. Thames*, No. Civ. A. 97-1104-RV-L, 2001 WL 394911, * 6 (S.D. Ala. March 30, 2001) (unpublished); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, *Lanier v. Fralick*, No. Civ. A. 98-0923AH-L, 2000 WL 1844679, *1-2, 5-6

12

(S.D. Ala. Oct. 24, 2000) (unpublished); blow to the forehead with a baton, resulting in no bruising or swelling, *Clark v. Johnson*, No. Civ. A. 97-00538, 2000 WL 1568337, *18-19 (S.D. Ala. Oct. 11, 2000) (unpublished); a sore, bruised ear lasting three days, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a prisoner's back from being shoved into a door frame, *DeWalt v. Carter,* 224 F.3d 607, 620 (7th Cir. 2000); lacerations, bruises, cuts, and swelling as a result of a guard hitting plaintiff's hand with a plastic box when plaintiff reached through a trap in the door of his cell, *White v. Matti*, No. 02-2761, 58 Fed. Appx. 636, 638 (7th Cir. Dec. 18, 2002) (unpublished); pain, swelling, and bruising from a guard closing a cuffport door on a prisoner's hand, *Outlaw v. Newkirk,* 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, *Markiewicz v. Washington*, No. 97-3589, 175 F.3d 1020, *1 (7th Cir. March 31, 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, *Schoka v. Swinney*, No. 94-16733, 53 F.3d 340, *1 (9th Cir. April 28, 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and swollen thumb from being hit with keys, *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir. 1994).

11.    On the other hand, the following types of injuries have been held to be sufficient to support Eighth Amendment claims: cuts, scrapes and contusions to the face, head, and body from a group beating, *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, *Escobar v. Zavaras*, No. 97-1303, 149 F.3d 1190, *3 (10th Cir. June 2, 1998) (unpublished); cuts, bruises, a swollen hand and a possible broken finger,

13

*Mitchell v. Maynard*, 80 F.3d 1433, 1440-41 (10th Cir. 1996); and permanent scarring and numbness from handcuffs, *Davidson v. Flynn*, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

12.     Clearly, Plaintiff's two "superficial lacerations" and one "scratch" which required washing but no pain medication are insufficient to support a constitutional claim under the Eighth Amendment.  Therefore, Plaintiff's claims against Defendants Ferrell, Caraway, and Johnson fail as a matter of law.

13.     Moreover, Plaintiff has also failed to show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him.  *Farmer*, 511 U.S. at 834.  It is settled that "confinement in a prison where violence and terror reign is actionable."  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (citations omitted).  While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm," "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment."  *Purcell*, 400 F.3d at 1320-23.  Plaintiff has failed to present any evidence of other acts of inmate-on-inmate violence, nor any evidence of knowledge by Defendants of a risk of harm to himself.

<u>Defendants Had No Notice of Risk of Attack</u>

14.     Assuming, without deciding, that Plaintiff could show that there was a substantial risk of serious harm as a result of inmate Thomas being in the exercise yard with Plaintiff, to survive summary judgment, Plaintiff must also put forth sufficient proof that Defendants were subjectively deliberately indifferent to this risk.  To meet this

14

element of his claim, Plaintiff must prove that Defendants actually knew that a substantial

risk of serious harm to Plaintiff existed and that Defendants "knowingly or recklessly"

declined to take action to prevent that harm.  *See LaMarca*, 995 F.2d at 1535.  "[A]n

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction

of punishment."  *Farmer*, 511 U.S. at 838.  Plaintiff has not met his burden with regard to

this element.

15.    First, with regard to Warden Ferrell, Plaintiff has not shown, nor even

alleged, that Warden Ferrell had actual knowledge of a substantial risk of serious harm to

Plaintiff.  Plaintiff's claim against Warden Ferrell is actually one of respondeat superior,

claiming that Warden Ferrell is responsible for a lack of security overall at Fountain.

"[S]upervisory liability under § 1983 occurs either when the supervisor personally

participates in the alleged unconstitutional conduct or when there is a causal connection

between the actions of a supervising official and the alleged constitutional deprivation."

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The necessary causal

connection can be established 'when a history of widespread abuse puts the responsible

supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'"

*Id.* (citations omitted).  "Alternatively, the causal connection may be established when a

supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional

rights' or when facts support 'an inference that the supervisor directed the subordinates to

act unlawfully or knew that the subordinates would act unlawfully and failed to stop them

from doing so.'" *Id.* (citations and internal quotation marks omitted).   Plaintiff has presented no such evidence in this case.   Accordingly, Plaintiff's Eighth Amendment claim against Defendant Ferrell fails as a matter of law.

16.     Next, as to Defendants Caraway and Johnson, Plaintiff has produced no evidence, nor has he even alleged, that he feared for his safety and that Officers Caraway and Johnson had been made aware of that fear.   Plaintiff has produced no evidence, nor has he even alleged, that inmate Thomas had made threats against him and that Defendant Officers Caraway and Johnson had been made aware of those threats.   Plaintiff produced no evidence that any prison staff was aware of the argument that he had with Thomas on the night before the incident.   Plaintiff has failed to put forth evidence that Officers Caraway and Johnson had actual knowledge of a substantial risk of serious harm to Plaintiff, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted).   Even if Plaintiff could show that Officers Caraway and Johnson were negligent in allowing inmate Thomas and Plaintiff in the yard together, or negligent in breaking up the altercation, this would not be sufficient in stating an Eighth Amendment claim.

17.     It is well established that negligence is not the standard in prison condition cases, but, rather, a plaintiff must prove that the defendant acted wantonly. *See Farmer*, 511 U.S. at 834 ("'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment'") (quoting *Wilson*, 501 U.S. at 297); *LaMarca*, 995 F.2d at 1535

16

("[i]n prison condition cases, 'deliberate indifference' constitutes wantonness").  *See also*

*Carter v. Galloway*,352 F.3d 1346, 1350 (11th Cir. 2003)(officers' placement of plaintiff

in a cell with a violent inmate despite plaintiff's complaints did not subject officers to

liability after plaintiff was attacked by inmate as officers only "possessed an awareness"

of the inmate's "propensity for being a problematic inmate."); *Hale v. Tallapoosa County*,

50 F.3d 1579, 1582 (11th Cir. 1995) (jailer's failure to check "bullpen" for two-and-a-half

hours during which time plaintiff was beaten by other inmates did not "support the level

of deliberate indifference and causal connection necessary to hold [the jailer] personally

responsible.").

18.     The Court finds instructive the Eleventh Circuit's decision in *Carter v.*

*Galloway*, 352 F.3d 1346 (11th Cir. 2003).  In that case, the Court upheld an award of

summary judgment in favor of defendant officers who plaintiff claimed failed to protect

him from an attack by his cellmate.  *Id.*  The Eleventh Circuit concluded that plaintiff had

failed to establish deliberate indifference on the part of defendants, despite their

*awareness* that plaintiff, who had no history of prison violence, was locked in a cell with

an inmate who was pending classification as a maximum security inmate, and who had

exhibited violent tendencies while in prison.  *Id.*  Not only were defendants aware of the

inmate's propensity for violence, but plaintiff actually advised defendant officers prior to

the attack that the inmate had threatened plaintiff, and was acting "crazy," pacing in his

cell like a "caged animal."  *Id.* at 1349.  The Court noted that "before Defendants'

awareness arises to a sufficient level of culpability, there must be much more than mere

17

awareness of [the inmate's] generally problematic nature." *Id.*  Further, the Court

explained that

> [e]ven assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also 'draw that inference.'

*Id.*  The Eleventh Circuit went on to explain that

> [d]efendants only possessed an awareness of [the inmate's] propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court.

*Id.* at 1350.  The Court noted that defendants "arguably should have placed Plaintiff

elsewhere but 'merely negligent failure to protect an inmate from attack does not justify

liability under section 1983...'" *Id.*, quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir. 1990).  In the present case, Plaintiff has not even asserted that Defendants had

knowledge of a possible attack by inmate Thomas.

19.     Therefore, because Plaintiff has failed to show that Defendants, with actual

knowledge that Plaintiff was at substantial risk of serious harm, recklessly failed to take

action to prevent that harm, Plaintiff cannot survive summary judgment on his claims.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants Warden Jerry Ferrell,

Officer Michael Caraway, and Officer Christopher Johnson are entitled to summary

judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is

recommended that Defendants' Motion for Summary Judgment be GRANTED, that this

action be DISMISSED with prejudice, and that judgment be entered in favor of

Defendant Jerry Ferrell, Defendant Michael Caraway and Defendant Christopher Johnson

and against Plaintiff Michael Marshall on all claims.

     The attached sheet contains important information regarding objections to the

report and recommendation of the Magistrate Judge.

     DONE this 13th day of March, 2007 .

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.